# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 9132 | **DATE** | 8/5/2004 |
| **CASE TITLE** | The City of Liberal, Kansas vs. Trailmobile Trailer, LLC | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth in the attached memorandum opinion and order, the Bankruptcy Court's decision is AFFIRMED. Enter judgment. This case is closed.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | |
| | Notices mailed by judge's staff. | | | AUG 0 5 2004 | |
| | Notified counsel by telephone. | | | date docketed | |
| X | Docketing to mail notices. | | | GMA | 18 |
| X | Mail AO 450 form. | | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | CLERK | | |
| | | | 2004 AUG -5 AM 9:42 | date mailed notice | |
| slf(lc) | courtroom deputy's initials | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE CITY OF LIBERAL, KANSAS ) | |
| ) | U.S.B.C. No. 02 A 0079 |
| Appellant, ) | |
| ) | U.S.D.C. No. 02 C 9132 |
| v. ) | |
| ) | HONORABLE DAVID H. COAR |
| TRAILMOBILE TRAILER, LLC, ) | |
| ) | |
| Appellee. ) | |

**DOCKETED**

**AUG 0 5 2004**

## MEMORANDUM OPINION AND ORDER

This matter is before this Court on appeal from the judgment of the Bankruptcy Court in favor of Defendant, appellee and against Plaintiff, appellant, in Adversary No. 02 A 0079. This Court has jurisdiction to determine this bankruptcy appeal pursuant to Title 28, Section 158(a)(1) of the United States Code, and Title 28, Section 1334 of the United States Code. For the following reasons, the judgment below is affirmed.

### I. Statement of the Issues Presented

Although appellant lists five issues that are on appeal, there is only one core issue that this Court must decide: did the bankruptcy court err when it determined that, pursuant to the terms of the lease entered into by the City of Liberal Kansas and Trailmobile, LLC, the automated riveters in questions remained the property of Trailmobile, LLC.

## II. Applicable Standard of Review

The bankruptcy court's findings of fact are upheld unless clearly erroneous. Matter of A-1 Paving and Contracting, Inc., 116 F.3d 242, 244 (7th Cir. 1997) (citing In re Marrs-Winn Co., 103, F.3d 584, 589 (7th Cir. 1996)). Additionally, all legal conclusions made by the bankruptcy court are reviewed *de novo*. Id. "Where both the relevant law and the specific facts are clear, and the job of the bankruptcy court was to apply the law to the facts of the case, [this Court] reverse[s] that court's conclusion only if clearly erroneous." Planters Bank, N.A. v. Connors, 283 F.3d 896, 899 (7th Cir. 2002) (internal citations omitted).

## III. Factual and Procedural Background

Sometime in 1996, Trailmobile Corporation[1] was searching for a location to build an additional trailer manufacturing facility (the"plant"). The City of Liberal, Kansas (the "City") was identified as a likely site, and negotiations commenced between Trailmobile and City. Eventually, an agreement was reached between City and Trailmobile whereby City would finance the construction of and equipping of the plant through General Revenue Bonds. For its part, Trailmobile was to contribute some essential equipment and a stream of lease payments. At the end of the lease term, the plant and equipment would be conveyed to Trailmobile for one dollar ($1.00). Presumably, the lease payments would compensate City for: (1) the value of the land; (2) the cost of constructing and equipping the plant; (3) the interest City paid out on the bonds issued to finance construction; and to the extent not otherwise covered, (4) a reasonable return on

---

[1] There are several related entities that will be referred to as "Trailmobile." They include Gemala North America Corporation, Trailmobile Corporation, Trailmobile, Inc., and Trailmobile Trailer, LLC. For purposes of these proceedings, they will be referred to collectively as "Trailmobile."

City's investment. This underlying agreement was reduced to writing in the form of a lease dated March 30, 1998. All provisions in the lease were to be interpreted pursuant to Kansas law. As contemplated by the March 30, 1998 Lease, City issued General Revenue Bonds in the amount of $14, 960,000.00, and the plant was built. If all had gone as planned and the lease had run its course, all (or almost all) would be rosy and the parties would not be in this Court. Unfortunately, things did not go as planned. In January 2001, Trailmobile ceased operations at the plant, and on December 12, 2001, filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*). On January 28, 2002, City initiated an adversary proceeding (No. 02 A 0079) in the Bankruptcy Court, seeking the return of certain automated "riveters" that were removed from the plant after it ceased operations in January 2001.[2] After a hearing, Judge Wedoff of the United States Bankruptcy Court entered judgment in favor of Trailmobile and against City on the adversary complaint. It is from that judgment that the instant appeal is taken.

Testimony at the hearing before Judge Wedoff revealed that in the early stages of the negotiations between City and Trailmobile about the construction of the plant, Mark Burgess (the Chief Financial Officer of Trailmobile Corporation) and Sidney Kulek (then an officer of Trailmobile) put together a written project proposal called "Project Igloo." That project formed the basis of negotiations between Trailmobile and interested parties (including the City). Under the heading of Facilities, that document provided as follows:

---

[2]After removal from the plant in Liberal, Kansas, the riveters were taken by Trailmobile to its facility in Jonesboro, Arkansas. During the course of the bankruptcy, Trailmobile agreed to sell the assets of the Jonesboro plant (including the riveters) to a trailer manufacturer called Great Dane. By agreement, these riveters have been withheld in escrow pending the outcome of this litigation.

> "A description of the capital and facilities required to finance this venture is provided below:
> 1. A working capital facility will be arranged by the Company's banks in order to fund receivables and inventory.
> 2. Fixed assets and supplies of $3MM to $5MM will be contributed to the venture by the Company.
> 3. Debt financing of up to $15 MM from the state and local community is being requested to finance the new building and equipment as required. A capital lease financed over 15 years is the proposed structure.
> Commitments on each of the aforementioned facilities will be realized prior to beginning the project."

There is no genuine dispute that Trailmobile's "contribution", "was to consist in whole/or in major part" of the two riveter lines at issue here. Similarly, there is no dispute that Trailmobile supplied the riveters and City paid to have them installed in the plant. What the parties do dispute, however, is whether ownership of the riveters passed to City at the time that they were "contributed." City argues that under Kansas law, the riveters were fixtures, and therefore, City's property as a matter of law. In support of its position, Trailmobile offered evidence that the riveters are huge (weighing five or six tons) and required a crane and certified millwrights or riggers to install them into a special concrete foundation by way of imbedded bolts.

## IV. Analysis of Judge Wedoff's Decision

In concluding that Trailmobile (and not City) owned the riveters, Judge Wedoff began by concluding that by the unambiguous terms of the lease agreement, the riveters remained the property of Trailmobile. In reaching that conclusion, he relied on Section 6.1(b) of the Lease:

> Tenant may from time to time make any additions or modifications at the Project location, including installation of additional machinery, equipment, furniture or fixtures in the Building or on the Leased Land, which Tenant may deem desirable

> for its business purposes; provided that all such additions, modifications and improvements do not adversely affect the structural integrity of the Building, the Tenant first having obtained all necessary permits and authorizations therefor, in accordance with all applicable laws, ordinances and regulations. All machinery, equipment, furniture and fixtures so installed by Tenant shall remain the sole property of Tenant in which Issuer shall not have any interest, and may be sold, made subject to a security interest, encumbered, modified or removed at any time while Tenant is not in default under this Lease; provided that any damage to the Project occasioned by such modification or removal shall be repaired by Tenant at its own expense.

As Judge Wedoff read the second sentence of this subsection, the riveters constituted "equipment, furniture or fixtures" installed by Trailmobile, and as such, they remained Trailmobile's property. City argues on appeal that Section 6.1(b) applies only to "additions or modifications" to the plant and that the riveters were not additions, but rather, were integral to the operation of the facility and that their use was contemplated from the beginning of negotiations. Indeed, City points out that Project Igloo required that Trailmobile "contribute" the riveters to the Project before the financing was completed and construction begun.[3] City also argues that ownership of the riveters was somehow transferred to the Project prior to the construction of the plant as Trailmobile's "contribution." This latter contention is based upon the "contribution" requirement in Project Igloo and the testimony of Sidney Kulek, who negotiated the lease on behalf of Trailmobile, but who now is a paid consultant for City. As Judge Wedoff noted, there is nothing in the lease that specifies a transfer of ownership of the riveters. There is

---

[3] The definition of "Project" in the Lease is as follows:
"Project" means the Leased Land, the Building and the Leased Equipment, and any other structure now or hereafter located on the Leased Land, and all real property and fixtures, usable or used in connection therewith, as they may at any time exist and the Leased Equipment, but not including Tenant's own machinery and equipment installed under the provisions of Section 6.1 (b) hereof.

no bill of sale that effectuates it. Kulek referred to a letter agreement that was never produced or placed in evidence. This Court agrees with Judge Wedoff that there is no evidence supporting a transfer or that the word "contribute" should be read as being synonymous with transfer or convey.

Finally, it should be noted that City's broad notion of "Project" to include all "contributions" made prior to construction does not square with the terms of the lease. The term "Project" is defined to include, "Leased Land, the Building and the Leased Equipment." Leased Equipment is defined as machinery and equipment..."acquired and installed in the Building." The terms of a contract cannot be properly interpreted in isolation; they can be properly defined only "by construing and considering the entire instrument from its four corners." City of Manhattan v. Galbraith, 945 P.2d 10, 14 (Kan. App. Ct. 1997) (internal citations omitted). Thus, after construing and considering the entire contract, the riveters are excluded from the definition of "Project" and subject to specific exclusions of property installed pursuant to Section 6.1(b).

This Court also agrees with Judge Wedoff's conclusion that the lease terms support Trailmobile's position here. Pursuant to Kansas law, "...all of the language used anywhere in the [contract] should be taken into consideration and construed in harmony with the other provisions of the contract." Slawson Exploration Co., Inc v. Vintage Petroleum, Inc., 78 F.3d 1479, 1481 (10th Cir. 1996) (quoting Texaco, Inc. v. Holsinger, 336 F.2d 230, 233 (10th Cir. 1964). City's reading of Section 6.1(b), to the effect that it is limited to additions and modifications after construction is completed, is not patently unreasonable. However, when read in conjunction with Section 4.1(a), City's position cannot be sustained. Section 4.1(a) provides, in pertinent part:

> All payments necessary to complete and equip the Project to Tenant's specifications will be made by the Issuer, but the total costs of the Project to Issuer, excluding the value of the Leased Land, but including costs of the Building, Leased Equipment and interest accruing during the construction period on the Bonds, will not in any event exceed $ 16.5 million. Title to all machinery, equipment and personal property of every nature paid for by Issuer shall be retained by Issuer until such time as Tenant shall exercise its option to purchase described in Section 1.1

The plain meaning of the provision is that the obligation to build and equip the plant was to be borne by City. Because the riveters would exceed the limit of City's undertaking, the riveters were to be provided by Trailmobile. Pursuant to Section 4.1(a), as to any machinery, equipment and personal property bought or provided by City, title would remain with City. Pursuant to Section 6.1(b), as to any machinery, equipment, furniture or fixtures provided by Trailmobile (including the riveters), ownership remained in Trailmobile. Because the terms of the lease are clear, it is unnecessary to address the alternative grounds upon which Judge Wedoff based his decision.

## V. Conclusion

For the foregoing reasons, the judgment of the Bankruptcy Court is affirmed.

Enter:

David H. Coar
United States District Judge

Dated: **August 5, 2004**